# TAB A



CORPORATION SERVICE COMPANY'

**DDZ / ALL**
**Transmittal Number: 9080253**
**Date Processed: 09/06/2011**

# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Mr. Michael Johnson Law Department<br>The Hartford<br>One Hartford Plaza<br>Law Department<br>Hartford, CT 06115 |
| Copy of transmittal only provided to: | Massimo Fraschilla |

| | |
|---|---|
| Entity: | Hartford Fire Insurance Company<br>Entity ID Number 2344256 |
| Entity Served: | Hartford Fire Insurance Company (The Hartford) |
| Title of Action: | Mozoul Fritzner vs. Hartford Fire Insurance Company (The Hartford) |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Hartford County Superior Court, Connecticut |
| Case/Reference No: | None Shown |
| Jurisdiction Served: | Connecticut |
| Date Served on CSC: | 09/06/2011 |
| Answer or Appearance Due: | 10/25/2011 |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Fritzner Mozoul<br>617-477-4836 |

LAW DEPARTMENT

SEP 0 7 '11

RECEIVE[

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  ¦  sop@cscinfo.com

**SUMMONS'- CIVIL**
JD-CV-1 Rev. 9-08
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
*www.jud.ct.gov*

*See other side for instructions*

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

- [ ] "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
- [X] "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
- [ ] "X" if claiming other relief in addition to or in lieu of money or damages.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| Hartford, 95 Washington St, Hartford, CT 06106 | (860) 548-2700 | October 25, 2011 |
| | | Month    Day    Year |

- [X] Judicial District    [ ] G.A.
- [ ] Housing Session    [ ] Number:

At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349)
Hartford

Case type code (See list on page 2)
Major: **T**    Minor: **90**

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only) |
|---|---|
| FRITZNER MOZOUL, 176 Sherman Rd, Chestnut Hill, MA 02467 | |

| Telephone number (with area code) | Signature of Plaintiff (if self-represented) |
|---|---|
| (617) 477-4836 | Mozoul Fritzner |

| Number of Plaintiffs: | Number of Defendants: | [ ] Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; and Country, if not USA) | |
|---|---|---|---|
| **First Plaintiff** | Name: | FRITZNER MOZOUL | P-01 |
| | Address: | 176 Sherman Rd, Chestnut Hill, MA 02467-3179 | |
| **Additional Plaintiff** | Name: | | P-02 |
| | Address: | | |
| **First Defendant** | Name: | Hartford Fire Insurance Company (THE HARTFORD) | D-50 |
| | Address: | One Hartford Plaza, Hartford, CT 06115 | |
| **Additional Defendant** | Name: | | D-51 |
| | Address: | | |
| **Additional Defendant** | Name: | | D-52 |
| | Address: | | |
| **Additional Defendant** | Name: | | D-53 |
| | Address: | | |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed (Sign and "X" proper box) | [ ] Commissioner of the Superior Court | Name of Person Signing at Left | Date |
|---|---|---|---|
| | [X] Assistant Clerk | Adam Bulewich, Jr. | 8/31/11 |

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. | **ATTEST:** |
| c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. | **TRUE COPY** |
| d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | CHARLES J. LILLEY CONNECTICUT |

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date signed |
|---|---|---|
| | Mozoul Fritzner | 8-31-2011 |

Name and address of person recognized to prosecute in the amount of $250

| Signed (Official taking recognizance); "X" proper box | [ ] Commissioner of the Superior Court | Date | Docket Number |
|---|---|---|---|
| | [ ] Assistant Clerk | | |

(Page 1 of 2)

Recognizance explained 18 AC

DOCKET No:

| | | |
|---|---|---|
| RETURN DATE: October 25, 2011 | : | SUPERIOR COURT |
| FRITZNER MOZOUL | : | J.D. OF HARTFORD |
| VS. | : | AT HARTFORD |
| HARTFORD FIRE INSURANCE COMPANY | : | August 31, 2011 |

## COMPLAINT

**INTRODUCTION:** On August 24, 2011 Plaintiff Fritzner Mozoul obtained a release of jurisdiction from Connecticut CHRO to bring civil action to the Superior Court against Defendant Hartford Fire Insurance Company (The Hartford). A copy of the release is attached to this complaint as Exhibit A.1.

## FIRST COUNT: (DISCRIMINATION)

1  In March 2009, Defendant renewed Plaintiff's work visa for 3 years as part of The Defendant's effort to reduce annual expenses by $250 million a year by the end of 2009. This decision also gave the necessary leverage to the defendant to keep plaintiff's compensation benefits significantly lower than similar American or green cardholder employees.

2  Plaintiff is a foreign-born (Canadian born Haitian) actuary who began working for Defendant in March 2005.

3  On September 17, 2009, Mr. Norman Hebert confirmed that the Defendant had stopped sponsoring work visas for foreign-born actuaries like Plaintiff. Mr. Hebert made the statement when he was asked to explain why the Defendant took $3.4 billion dollars in TARP money while outsourcing American Jobs to India.

4  Prior to the 2008 economic downturn, The Defendant had renewed Plaintiff's work visa for a one year period from 2006 to 2008.

5  On august 1, 2009, Plaintiff and three other white new FCAS were scheduled to receive a cash payment of between $15,000 and $30,000. Former Chief Actuary (a.k.a. TJ)

authorized payments to the three white new FCAS while he discriminatorily forfeited plaintiff's payment to help defendant achieve its $250 million annual cost reduction by the of 2009.

6   In addition to being an act of discrimination, the decision of Defendant to deny me this grant was a violation of its own policies and procedures as a well as a breach of contractual obligations which Defendant had toward me. A copy of the contract is attached to this complaint as exhibit A.2.

7   The provision of the policy states the following: "Upon Fellowship, you will be eligible to receive payout of the Associate grant. In addition, as a new FCAS (Fellowship – Casualty Actuarial Society), you will be eligible to receive another award grant. This grant amount will be determined by management at the time of grant, range from 10-25% of your base salary at the time of grant and be a fixed amount payable three year after the grant date."

8   Because the Defendant denied me the automatic Tier 6 promotion on 8-1-2009, I was not able to negotiate a higher compensation package in March 2010 when I accepted a job offer with my current employer.

9   On March 25, 2010, the Defendant admitted violating the Connecticut Minimum Wage Act when the Defendant offered me, through my former attorney, a settlement amount equivalent to the double statutory damage related to the minimum dollar amount of my ACAS grant that was payable on August 1, 2009. A copy of the E-communication is attached to this complaint as Exhibit A.3.

10  In august 2009, Plaintiff and four other new FCAS were scheduled to receive a FCAS grant award of between $15,000 and $30,000 payable on August 1, 2012. Former Chief Actuary (a.k.a. TJ) granted the FCAS award to the other four new FCAS while discriminatorily forfeited plaintiff's FCAS grant to help achieve the $250 million annual cost reduction.

11  The Hartford's decision to deny me the Fellowship grant was a violation of its own policies and procedures as a well as a breach of contractual obligations which Defendant had toward me.

12  For instance, On August 1, 2009, had the Defendant granted me the FCAS grant, I would have been able to receive, from my current employer, a cash payment of between $15,000 and $30,000 payable on August 1, 2012

13  On august 1, 2009, Plaintiff and four other new FCAS were scheduled to be promoted automatically to Assistant Actuary & Director. Former Chief Actuary (a.k.a. TJ) granted the automatic promotion to the other four new FCAS while forfeited plaintiff's FCAS grant to help defendant achieve its $250 million annual cost reduction.

14 The Defendant violated its policy for the Property & Casualty Actuarial Student Program by denying me the automatic Tier 6 promotion on August 1, 2009.

15 For instance, On August 1, 2009, had the Defendant granted me the automatic Tier 6 promotion, I would have been able to receive, from my current employer, an additional base salary of between $20,000 and $40,000 effective April 20, 2010.

16 On August 12, 2009, Mr. Kenneth Kasner (my former supervisor) informed me that former Chief Actuary (TJ) forfeited my ACAS and FCAS grants because of my job performance in Specialty, 12 days after the other new fellows received their cash payments, FCAS grant letters, and the automatic promotion to Assistant Actuary & Director (a.k.a. Tier 6) on 8-1-2009.

17 Instead of granting me such automatic promotion, the Defendant changed key provisions of the Actuarial Student Program to justify their retaliatory, discriminatory decisions against me.

18 On March 25, 2010, the Defendant admitted violating the Connecticut Minimum Wage Act when the Defendant offered me, through my former attorney, a settlement amount equivalent to the double statutory damage related to the minimum dollar amount of my ACAS grant that was payable on August 1, 2009. A copy of the E-communication is attached to this complaint as Exhibit A.3.

19 Prior August 2009, former chief actuary and former VP (Mr. Johnston and Mr. Hebert) had discriminatorily forfeited plaintiff's annual merit increases for two years in retaliation because Plaintiff's put defendant on notice for discriminatory language used by Ms. Tara Bush toward Plaintiff in February 2007.

20 For instance, in February 2007, while working in the National Account Department, my supervisor, Ms. Tara E. Bush, FCAS spoke condescendingly to me and said "I don't trust you as a person" during the presentation of my work in Ms. Bush's office.

21 Plaintiff used to sit outside of Ms. Bush's office when he joined Specialty in December 2006. After Plaintiff put Defendant on notice for discrimination and retaliation, in February 2007, Ms. Bush was transferred to a cubicle outside of Mr. Steven Basson's office.

22 Prior August 2009, former chief actuary and former VP & Actuary (TJ and Norm) had discriminatorily forfeited Plaintiff's annual performance bonuses for two years in retaliation because Plaintiff's put defendant on notice for discriminatory language used by Ms. Tara Bush toward Plaintiff in February 2007.

23 On November 14, 2008, Plaintiff applied for a job (Actuarial Associate, Spectrum Pricing – 0805191) within the Small Commercial Line; however, Defendant did not acknowledge plaintiff's application.

24  The Spectrum pricing position was ultimately given to a white actuarial student with fewer CAS exams than Plaintiff.

25  In December 2008 after Defendant wrongfully denied a rotational position to Small Commercial, former VP & Actuary (Norman Hebert, FCAS) told plaintiff to look for jobs outside of The Hartford, which suggested that Plaintiff was not good enough to be an employee of the P&C Actuarial department of the Defendant.

26  The above adverse actions were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e and the Civil Rights Act of 1991, as well as the following Connecticut General Statutes and Acts listed below: 46a-58(a), and 46a-60(a)(4).

27  Based on the foregoing, I was discriminated against in the terms and conditions of my employment with respect to my compensation and benefits on account of my race and national origin in violation of state and federal law.


**SECOND COUNT: (RETALIATION)**

28  On September 18, 2009 Mr. Kenneth Kasner, Mr. Thomas S Jonhston and Mr. Norman Hebert retaliated against Plaintiff because Fritzner Mozoul, on August 14, 2009, put Defendant on notice for discrimination, retaliation, and breach of contract.

29  These ethic violations were reported to Mrs. Barbara Kenney (Human Resources), on August 14, 2009, at a face to face meeting, which lasted approximately 90 minutes.

30  Mr. Thomas S Jonhston and Mr. Norman Hebert's retaliatory decision to deny Plaintiff's vested benefits was part of The Defendant's effort to reduce its annual operating expenses by $250 million a year by the end of 2009.

31  In December 2009, Mr. Hebert told me that Mr. Kasner was not involved in decision to him on probation on September 18, 2009.

32  While Mr. Thomas S Jonhston and Mr. Norman Hebert's retaliatory decision contributed more than $30,000 to The Defendant's effort to reduce its annual expenses by $250 million a year by the end of 2009; however, it has cost the Plaintiff's family at least $90,000 over the past 2 years; will cost the Plaintiff more than $2.0 million dollars over the next 30 years in term of future salary income.

33  An exhibit outlying the estimated nominal values of these vested benefits denied to Plaintiff by the Defendant is attached to this complaint as exhibit A.4.

34 The Defendant had begun retaliated against me since February 2007 because I put Mr. Steven Basson on notice for discriminatory language used by Ms. Tara Bush toward Plaintiff in February 2007.

35 In March 2007, Mr. Steven Basson informed Plaintiff that Ms. Tara Bush had bad-mouthed him in retaliation for reporting her discriminatory statement to her supervisor. Mr. Basson called the Plaintiff to his office and informed him of Ms. Bush retaliatory conduct.

36 On June 1, 2007, Ms. Bush poorly evaluated plaintiff's job performance in retaliation for reporting her discriminatory statement to Mr. Basson. Defendant had unsuccessfully tried to cover up Ms. Bush discriminatory, retaliatory conducts toward Plaintiff by poorly evaluating Plaintiff's in order to force Plaintiff to voluntarily resign from his employment with the Defendant

37 On February 9, 2010, The Defendant maliciously distributed copies of a confidential document to eight unauthorized Hartford employees.

38 In this confidential document, the Defendant informed eight unauthorized employees of senior management's intention to terminate my employment in 30 days.

39 According to the Hartford Investigative Services "Investigative Report Summary Case #: I2010035", additional copies were discovered on two (2) copy machines in the Actuarial Department. A copy of the "Investigative Report Summary Case #: I2010035" is attached to this complaint as Exhibit A.5.

40 At a fact finding conference on October 28, 2010, Mr. Eduard Luther (The Hartford investigator) testified the following Hartford employees: Valerie Vetere, Mr. Norman Hebert, and Mr. Kenneth Kasner had access to the confidential document created on February 8, 2010.

41 Mr. Hebert and Ms. Vetere names were not mentioned in "Investigative Report Summary Case #: I2010035" even though they are equally responsible for the humiliation that Plaintiff had suffered as a result of the malicious distribution of his confidential information to eight unauthorized Hartford employees on February 9, 2010.

42 Mr. Hebert's employment with The Hartford was ended shortly after Plaintiff resigned from The Hartford while his manager (Mr. Thomas S Jonhston) might have been forced to early retirement around the same period.

43 The Defendant's decision to let go these two seasoned executives, shortly after Plaintiff submitted his resignation in spring 2010, suggests a strong correlation with their retaliatory,

discriminatory actions toward Plaintiff during the last three years of Plaintiff's employment with the Defendant.

44 The termination of Mr. Norman Hebert's employment with the Defendant shortly after the February 9th incident suggests that Mr. Hebert was somewhat responsible for the distribution of the confidential information to 8 unauthorized Hartford employees on 02-09-2010. Otherwise why would The Hartford let go an experienced Actuary of Mr. Hebert's caliber while extending a job offer to Mr. Kasner who reports directly to Mr. Michael J. Blasko, FCAS.

45 Mr. Hebert, Mr. Kasner, and Mr. Blasko were interviewed by Mr. Eduard Luther of the Hartford Investigative Services in February 2010 as potential suspects.

46 Mr. Hebert was recently hired by Travelers insurance in Hartford, Connecticut..

47 The Defendant redesigned the P&C Actuarial Professional Designation Award Plan, and the Actuarial Student Program Handbook by adding provisions that discriminated against Plaintiff.

48 Needless to say, the Defendant had inflicted so much emotional pain to me and my family that I had troubled sleeping for a long period of time after I appealed Defendant's decision to forfeit my grants and my automatic promotion to tier 6.

49 For instance, the decision to forfeit the cash payment of between $15,000 and $30,000 payable on August 1, 2009 prevented me from visiting my ailing mother, in Haiti, who passed away few weeks later in mid-August 2009. Needless to say, my family and I had experienced a great deal of pain and suffering as a result of the Defendant retaliatory, discriminatory decision.

50 Defendant's responses to the CHRO on my complaint of discrimination and retaliation denied any wrongdoing by Mr. Thomas S Jonhston and Mr. Norman Hebert (two former senior executives), but ended their employment shortly after I submitted my resignation in April 2010.

51 Based on the foregoing, the Defendant is responsible for damages to my reputation and the humiliation that I suffered as a result of the malicious act that took place on February 9, 2010 at The Hartford's headquarter in Hartford.

52 The retaliatory, discriminatory decisions by the Defendants toward Plaintiff were intentional infliction of emotional distress, which had caused me insomnia for a long period of time during my last year of employment with the Defendant.

53  The above adverse actions were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e and the Civil Rights Act of 1991, as well as the following Connecticut General Statutes and Acts listed below: 46a-58(a), and 46a-60(a)(4).

54  Based on the foregoing, I was retaliated against in the terms and conditions of my employment with respect to my compensation and benefits on account of my decision to report ethic violations by my supervisors and managers to Human Resources on August 14, 2009. I was further retaliated against in Defendant's decision to place me on probation (09-18-2009) on account of my race and national origin in violation of state and federal law.

### PRAYER FOR RELIEF

55  Plaintiff demands judgment against Defendant as follows: (i) compensatory damages in the amount of $5 million ($5,000,000) on Count I; (ii) statutory double damages on count II; (iii) special damages in the amount of $2 million ($2,000,000) on all Counts (iv) both pre-judgment and post-judgment interest on all Counts; and, (viii) such other and further relief as this Court finds just and equitable.

### JURY TRIAL

Plaintiff demands a jury trial.

Respectfully submitted,

/s/

Fritzner Mozoul, Plaintiff in Pro Se
176 Sherman Rd.
Chestnut Hill MA, 02467

Dated: August 31, 2011

ATTEST:
A TRUE COPY
CHARLES J. LILLEY
CONNECTICUT MARSHAL
HARTFORD COUNTY

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff claims:

1. Money Damages;
2. Interest;
3. Attorneys' Fees;
4. Cost; and
5. Such other and further relief as may be required.

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand, exclusive of interest and cost, is:

(X)    greater than $15,000.00

( )    greater than $2,500.00 but less than $15,000.00

( )    less than $2,500.00

(X)    The remedy sought is based upon an express or implied promise to pay a definite sum.

_____/s/_____
Fritzner Mozoul, Plaintiff in Pro SE
176 Sherman Rd.
Chestnut Hill MA, 02467

Plaintiff demands trial by jury

Dated: August 31, 2011

*Exhibit A.1*

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

**Fritzer Mozoul**
COMPLAINANT

vs.                                        **DATE: August 24, 2011**

**The Hartford**
RESPONDENT

CHRO Case No. 1010117
EEOC No. 16A2010-00024

## RELEASE OF JURISDICTION

Pursuant to the request for a release of jurisdiction, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint in accordance with CONN. GEN. STAT. § 46a-101. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION   BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

In granting this release, the Commission expressly finds in accordance with CONN. GEN. STAT. §§ 46a-100 and 46a-101(b) that all conditions precedent to the issuance of the release have been met. The complaint was timely filed under CONN. GEN. STAT. § 46a-82 and the complaint has been pending for a period of not less than 210 days. The complaint is not currently scheduled for public hearing nor is there reason to believe that the complaint will be resolved within a period of 30 days from the date the Commission received the request.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

With the granting of this release of jurisdiction, the Commission administratively dismisses this complaint in accordance with CONN. GEN. STAT. § 46a-101(d) without cost or penalty to any party.

Very truly yours,

Robert J. Brothers, Jr.
Executive Director

*Exhibit A-2*



THE
HARTFORD

August 7, 2008

Fritzner Mozoul
36 Westmoreland Drive
West Hartford, CT 06117

I am pleased to inform you that effective August 1, 2008, you have been granted an award under The P&C Actuarial Professional Designation Award Plan.

The ultimate amount payable will be between $15,000 and $30,000, as determined by P&C Actuarial Management, with payouts occurring upon achievement of Fellowship designation. The following criteria will be used to determine the payout amount:

> Demonstration of leadership competencies with emphasis on:
> - o Communication and Influence - communicates and influences for impact, fosters open communication, presents information effectively
> - o Creativity/Innovation - thinks creatively for competitive advantage, questions conventional wisdom and generates new perspectives
> - o Drive for Results - takes personal accountability for delivering on business commitments, establishes priorities, promotes an entrepreneurial spirit, executes business strategies

This award will pay out only if you achieve Fellowship within five (5) years of receipt of grant, and if you are actively employed at The Hartford at the time of payout.

More information on the Associateship Award can be obtained from the attached Plan document.

Your receipt of this award is significant recognition of your past and anticipated future contributions to The Hartford's success. Please accept this award with my warm congratulations.

Sincerely,

Thomas S. Johnston, FCAS, MAAA
Senior Vice President & Chief Actuary

cc:     Kenneth Kasner
        CAR Team Member

*Exhibit A.3*

**From:** Albinger, William J (Law) [mailto:William.Albinger@thehartford.com]
**Sent:** Thursday, March 25, 2010 3:58 PM
**To:** William Madsen
**Subject:** RE: Fritz Mozoul [HFSG-LAW.FID49986]

I had previously and it's not.

Bill

**From:** William Madsen [mailto:wmadsen@mppjustice.com]
**Sent:** Thursday, March 25, 2010 3:39 PM
**To:** Albinger, William J (Law)
**Subject:** RE: Fritz Mozoul [HFSG-LAW.FID49986]

Thanks Bill—In the meantime, could you ascertain whether—and without making any commitments—six months is within the potential range of resolution?  Thanks, Will

**From:** Albinger, William J (Law) [mailto:William.Albinger@thehartford.com]
**Sent:** Thursday, March 25, 2010 3:36 PM
**To:** William Madsen
**Subject:** Fritz Mozoul [HFSG-LAW.FID49986]

Will:

Per our discussion earlier today, Fritz Mozoul's managers will defer meeting with him until next Tuesday, March 30th, to discuss his performance under his final written warning and his employment status.  I understand that during this time Fritz will be considering the proposal that we had previously discussed.

Please let me know if there are any developments.

Thanks

Bill

Exhibit A-4

8/29/2011

Summary of Employee Benefits Received by New FCAS in Summer 2009
Vested date: June 25, 2009
Valuation Date: October 14, 2011

| (1) | (2) Effective Date | (3) Annual Nominal Value* | (4) Life Nominal Value** | (5) Denied or Received? |
|---|---|---|---|---|
| 1. *Automatic Promotion to Assistant Actuary & Director (Fellowship)* | 8/1/2009 | $ 32,487 | $ 1,945,971 | *Denied* |
| 2. *Associateship bonus ranges from $15,00 to $30,000 **** | 8/1/2009 | $ 20,000 | $ 20,000 | *Denied* |
| 3. *Fellowship grant award ranges from $15,00 to $30,000* | 8/1/2009 | $ 20,000 | $ 20,000 | *Denied* |
| 4. Exam raise (CAS Exam 8) | 8/1/2009 | $ 3,000 | 179,700 | Received |
| 5. Additional increase (to base salary); Fellowship (a.k.a. FCAS) | 8/1/2009 | $ 5,000 | 299,500 | Received |
| 6. Fully paid trip to attend CAS annual meeting in Boston, MA | Nov-09 | $ 2,000 | 2,000 | Received |
| 7. Fully paid dinner with former Chief Actuary (a.k.a. TJ) in Boston, MA | Nov-09 | $ 100 | 100 | Received |
| 8. Pewter MUG engraved with moth/year of FCAS designation | 7/29/2009 | $ 35 | 35 | Received |
| 9. Framing of fellowship diploma | Nov-09 | $ 75 | 75 | NA |
| 10. Statutory interest on ACAS bonus payment (APR: 10%)=(1.1^(26.5/12)-1)*20000 | | | | |
| 11. Total nominal value (NV) of forfeited benefits (1.4 + 2.4 +3.4 + 10.4) | | | $2,4,685.44 | $ 1,990,656 |
| 12. Total NV of forfeited benefits adjusted for pension & 401(k) contributions (R11*1.4 *1.035*1.08) | | | $ 2,225,155 | |

**Footnotes:**

Social Security Normal Retirement Date: 12/1/2039

Factor for future salary/merit increases [Sn(i)]: based on 4.25% rate of
increase in compensation levels and 30.4 years of future service. [Sn(i)] = 59.9
{[(1+i)^n - 1]/i} such as i = 4.25% and n = 30.4 years

n = years of future employment services (12/1/2039 - 8/1/2009)/365 = 30.4
Load for 401(K) employer matched contribution = 1.035
Load for Pension Benefit Cash Balance = 1.08

* (32,487 =(120,000-92,700)*1.19), [factor 1.19 adjusts for the target bonus, which is 19% for the 6 employees as of 8/1/2009]
** (1,945,971 = 32,487*59.9, (59.9 is a factor for future salary increase [Sn(i)])
*** Not payable to employees who received Associateship (a.k.a. ACAS) designation while working for a different employer (e.g. Wang Yong HU (a.k.a. Oscar Hu))
Disclaimer: $2,225,155 is a reasonable estimate of the forfeited benefits, which are based on reasonable assumptions.

Prepared by: Fritzner Mozool, FCAS

Exhibit A.5



# Unauthorized Release of Document /Information
# Violation of The Code of Ethics and Business Conduct

### Kenneth R Kasner /Fritzner Mozoul

### Home Office Hartford, CT

### Investigative File Number: 12010035

### Initial /Closing Report

### April 14, 2010

Distribution:

Mike Hession
Ron Apter
William Albinger

Investigation Performed By:

Sidney Luther

Approved By:

John S. Jacewicz, V.P.
Investigative Services

# The Hartford

## Investigative Services
### Investigative Report Summary
### Case #:      I2010035
### Subject Name:   Kenneth Kasner

**Report Date:** 04/09/2010
  **Incident Dates:**          02-09-10
  **Date Reported to IS:**     02/09/2010

**Case Status:**  Open

**Incident Type:**
  **Primary:**       Unauthorized Release of Document/Information
  **Secondary:**     Violation of the Code of Ethics and Business Conduct

**Company:**          Hartford Group Inc.
**Line Of Business:**  Claims

**Reporting Department:**   Human Resources
**Reported to IS by:**      ERCS
**Method of Discovery:**    Employee notification
**Incident Location:**   **City:**  Hartford  **State:**     CT

**Investigator(s):**      Luther
   **Investigative Unit:** Investigative Services - Home Office

   **Recovery/Restitution Comments:**

**Agency Referral:**        Not referred to an agency
**Law Dept Notification:**   ● Yes ○ No
  **Notification Date:**     02/17/2010
  **Person Notified:**       William Albinger

**Case Summary/Conclusion:**
   On 02-09-10 Employee Relations Consulting Service (ERCS) reported that a confidential
   draft copy of a Final Written Warning that they were working on with Hartford AVP
   Kenneth Kasner, for Hartford employee Fritzner Mozoul, had been copied and distributed
   to eight unauthorized Hartford employees in the Actuarial Department.

   The subsequent investigation determined that On 02-08-10 Hartford AVP Kenneth
   Kasner had created a draft copy of a first and final warning regarding performance related
   issues for one of his direct reports Fritzner Mozoul. The investigation additionally
   determined that Kasner failed to properly secure the Fritzner Mozoul final warning

document which was copied and distributed to eight unauthorized Hartford employees in the Actuarial Department as well as being discovered on two(2) copy machines in the Actuarial Department. The Hartford's Information Protection (THIP) unit conducted forensic examinations of the copy machines involved and determined that eleven (11) copies of a two (2) page document were created at approximately 6:29 am on 02-09-10 on one of the two copy machines in the Actuarial Department. THIP was unable to identify the person responsible for distributing the confidential documents.

In a written sworn statement taken on 02-17-10, Hartford AVP Kenneth Kasner admitted that he had created a draft copy of a first and final warning regarding performance related issues for Fritzner Mozoul on 02/08/10 and did not properly secure the document in his office. Kenneth Kasner additionally stated that he keeps all of his employees files in his desk and that there are times that his desk is left unlocked

Due to a lack of physical evidence and /or witnesses, Investigative Services has been unable to identify the person or persons responsible for the unauthorized distribution of the confidential Mozoul document.

Hartford AVP Kenneth Kasner has been counseled by ERCS regarding The Hartford's policies practices designed to protect the confidentiality and security of employee records so as to insure that the confidential contents of employee records are only shared with those who have a legitimate business need or as required by law. This investigation is being closed at this time however should any additional information or leads develop this investigation will be reopened.

On 04-15-10 Hartford employee Fritzner Mozoul resigned from The Hartford for personal reasons.

**Sarbanes-Oxley Related Impact:**    ● Yes ○ No
**Referral Method:**    N/A
**Internal Control Deficiencies:**

# TAB B

**SUMMONS - CIVIL**
JD-CV-1  Rev. 9-08
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

**See other side for instructions**

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| | |
|---|---|
| ☐ | "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500. |
| ☒ | "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more. |
| ☐ | "X" if claiming other relief in addition to or in lieu of money or damages. |

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| *Hartford, 95 Washington St, Hartford CT 06106* | (860) 548-2700 | October 25, 2011 |
| | | Month  Day  Year |

| ☒ Judicial District | ☐ G.A. | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* |
|---|---|---|---|
| ☐ Housing Session | Number: | *Hartford* | Major: **T**   Minor: **90** |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| FRITZNER MOZOUL, 176 Sherman Rd. Chestnut Hill, MA 02467 | |
| Telephone number *(with area code)* | Signature of Plaintiff *(if self-represented)* |
| (617) 477-4836 | *Mozoul Fritzner* |

| Number of Plaintiffs: | Number of Defendants: | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; and Country, if not USA)* | |
|---|---|---|
| **First Plaintiff** | Name: FRITZNER MOZOUL<br>Address: 176 Sherman Rd, Chestnut Hill, MA 02467-3179 | P-01 |
| **Additional Plaintiff** | Name:<br>Address: | P-02 |
| **First Defendant** | Name: Hartford Fire Insurance Company (THE HARTFORD)<br>Address: ONE Hartford Plaza, Hartford, CT 06115 | D-50 |
| **Additional Defendant** | Name:<br>Address: | D-51 |
| **Additional Defendant** | Name:<br>Address: | D-52 |
| **Additional Defendant** | Name:<br>Address: | D-53 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☐ Commissioner of the Superior Court | Name of Person Signing at Left | Date |
|---|---|---|---|
| | ☒ Assistant Clerk | Adam Brown | 8/31/11 |

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

| For Court Use Only |
|---|
| File Date |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date signed |
|---|---|---|
| | *Mozoul Fritzner* | 8-31-2011 |
| Name and address of person recognized to prosecute in the amount of $250 | | |

| Signed *(Official taking recognizance; "X" proper box)* | ☐ Commissioner of the Superior Court | Date | Docket Number |
|---|---|---|---|
| | ☐ Assistant Clerk | | 115035706 |

(Page 1 of 2)

DOCKET No:

RETURN DATE: October 25, 2011      :      SUPERIOR COURT

FRITZNER MOZOUL      :      J.D. OF HARTFORD

VS.      :      AT HARTFORD

HARTFORD FIRE INSURANCE COMPANY    :      September 12, 2011

## **COMPLAINT**

### **INTRODUCTION**

After obtaining a release of jurisdiction from Connecticut CHRO, on August 24, 2011, Plaintiff Fritzner Mozoul (a foreign-born actuary) brings this civil action to this honorable Court against his former employer (The Hartford) for unpaid wages, breach of contract, and failure to promote by alleging discrimination and retaliation. A copy of the release is attached to this complaint as Exhibit D.

Plaintiff files this lawsuit because, on August 1, 2009, Defendant denied him the following *vested employee benefits*:

1. Payout of the Associate grant of between $15,000 and $30,000. See Exhibit A.1.

2. Fellowship grant award of 10-25% of base salary, payable three years after the grant date. See Exhibit A.1.

3. Automatic promotion to Assistant Actuary & Director. See Exhibit A.1.

As of December 1, 2011, the total nominal value of these forfeited vested benefits is *$2,225,486*. A calculation sheet is attached to this complaint as Exhibit A.4.

This case is about two former executives (Mr. Thomas S Jonhston and Mr. Norman Hebert) who *discriminatorily forfeited* **Plaintiff's** *vested benefits* to help Defendant met its 2009 expenses reduction goal of *$250,000,000*. This aggressive cost cutting was triggered by *economic injuries inflicted* to Defendant financial balance sheets by the 2008 financial meltdown, which had left AIG, Lehman Brothers and Defendant financially vulnerable.

## FIRST COUNT: (DISCRIMINATION)

1   Plaintiff is a foreign-born actuary (Canadian born Haitian) who began working for
    Defendant in March 2005.

2   Prior to the 2008 economic downturn, The Defendant had renewed Plaintiff's work visa for
    a one year period from 2006 to 2008.

3   In March 2009, Defendant renewed Plaintiff's work visa for 3 years as part of The
    Defendant's effort to reduce its 2009 operating expenses by $250 million. This decision
    also gave the necessary leverage to the Defendant to keep Plaintiff's salary significantly
    lower than similar American or green cardholder employees.

4   According to Mr. Norman Hebert, Defendant had stopped sponsoring work visas for
    foreign-born actuaries like Plaintiff. Mr. Hebert made the statement when he was asked to
    explain why the Defendant took $3.4 billion dollars in TARP money from the government
    of the tax-payers while it was outsourcing American Jobs to India.

5   On august 1, 2009, Plaintiff and three other white new FCAS were scheduled to receive a
    cash payment of between $15,000 and $30,000. Former Chief Actuary (a.k.a. TJ)
    authorized payments to the three white new FCAS while he discriminatorily forfeited
    Plaintiff vested payment to help Defendant met its 2009 expenses reduction goal of
    **$250,000,000.**

6   In addition to being an act of discrimination, the decision of Defendant to deny
    Plaintiff this grant was a violation of its own policies and procedures as a well as a
    breach of contractual obligations which Defendant had toward me. **A copy of the
    contract is attached to this complaint as exhibit A.**

7   The provision of the policy states the following: "Upon Associateship, you will receive a $15,000 target grant. The **payout** for the grant *will VEST* upon receipt of Fellowship designation. The actual award paid will vary based upon your performance up to a maximum award of $30,000. See Exhibit A.1

8   Plaintiff passed his last CAS exam to receive Fellowship designation on June 25, 2009, which was 36 days before the payout date (8-1-2009).

9   On the payout date of the Associate award grant, Plaintiff and four other new FCAS were scheduled to receive *a FCAS grant award of between $15,000 and $30,000 payable on August 1, 2012.* Former Chief Actuary (a.k.a. TJ) granted the FCAS award to the other four new FCAS while discriminatorily forfeited plaintiff's FCAS grant to help Defendant met its 2009 expenses reduction goal of *$250,000,000.*

10  The provision of the policy states the following: "**Upon Fellowship,** *you will be eligible to receive payout of the Associate grant. In addition, as a new FCAS* (Fellowship – Casualty Actuarial Society), *you will be eligible to receive another award grant*. This grant amount will be determined by management at the time of grant, range from 10-25% of your base salary at the time of grant and be a fixed amount payable three year after the grant date."

11  The Hartford's decision to deny me the Fellowship grant was a violation of its own policies and procedures as a well as a breach of contractual obligations which Defendant had toward me.

12  Plaintiff passed his last CAS exam to receive Fellowship designation on June 25, 2009, which was 36 days before the payout date (8-1-2009). Vested date is June 25, 2009 while FCAS grant effective date was August 1, 2009.

13  For instance, On August 1, 2009, had the Defendant granted me the FCAS grant, I would
have been able to receive, from my current employer, a cash payment of between $15,000
and $30,000 payable on August 1, 2012.

14  On august 1, 2009, Plaintiff and four other new FCAS were scheduled to be automatically
promoted to Assistant Actuary & Director (Fellowship). Former Chief Actuary (a.k.a. TJ)
granted the automatic promotion to the other four new FCAS while discriminatorily
forfeited plaintiff's automatic promotion to help Defendant met its 2009 expenses
reduction goal of **$250,000,000**. See Exhibit A.1.

15  Because the Defendant denied Plaintiff the automatic promotion to Assistant Actuary &
Director (Fellowship), Plaintiff was not able to negotiate a higher base salary and target
bonus, in March 2010, when He accepted a job offer with his current employer.

16  The Defendant violated its policy for the Property & Casualty Actuarial Student Program
by denying Plaintiff the automatic promotion to Assistant Actuary & Director (Fellowship)
on August 1, 2009.

17  For instance, On August 1, 2009, had the Defendant granted me the automatic promotion, I
would have been able to receive, from my current employer, an additional base salary of
between $20,000 and $40,000 effective April 20, 2010.

18  **Eleven (11) days after these forfeited vested benefits were due** Mr. Kenneth Kasner
(my former supervisor) informed me that former Chief Actuary (a.k.a.TJ) forfeited
my Associate and Fellowship grants because of my job performance in Specialty. Yes,
11 days after the other new fellows received the payout of their Associate grants; their
FCAS grant awards; the automatic promotion to Assistant Actuary & Director
(Fellowship) on 8-1-2009.

19  In anticipation to Plaintiff's automatic promotion to Assistant Actuary & Director (Tiered 6), Mr. Kenneth Kasner offered him a new position, which was consistent with this automatic promotion, which never was granted. Mr. Kasner's offer to Plaintiff came 3 days before the effective date of the automatic promotion.

20  Mr. Kasner offered Plaintiff this position because he expected Ellen Guffy (one of Mr. Kasner's three direct reports) to receive a job offer from Specialty within days.

21  One day after Mr. Kasner offered Plaintiff Ellen Guffy's job, Mrs. Guffy received a job offer from Tara Bush, which she accepted the same day (on July 30, 2009).

22  On March 25, 2010, the Defendant admitted violating the Connecticut Minimum Wage Act when the Defendant offered me, through my former attorney, a settlement amount equivalent to the double statutory damage related to the minimum dollar amount of my Associate grant that was payable on August 1, 2009. A copy of the E-communication is attached to this complaint as Exhibit A.3.

23  Prior August 2009, former chief actuary and former VP (Mr. Johnston and Mr. Hebert) had discriminatorily forfeited Plaintiff's annual merit increases for two years in retaliation because Plaintiff's put Defendant on notice for discriminatory language used by Ms. Tara Bush toward Plaintiff in February 2007.

24  For instance, in February 2007, while working in Specialty (a.k.a. National Accounts / RMD), my supervisor, Ms. Tara E. Bush, spoke condescendingly to me and said "I don't trust you as a person" during the presentation of my work in Ms. Bush's office.

25  Plaintiff used to sit outside of Ms. Bush's office when he joined Specialty in December 2006. After Plaintiff put Defendant on notice for discrimination and retaliation, in February

2007, Defendant took away Ms. Bush's corner-office and transferred her to a cubicle outside of Mr. Steven Basson's office.

26 **Other instances when Defendant had discriminated against Plaintiff:** on November 14, 2008, Plaintiff applied for a job (Actuarial Associate, Spectrum Pricing – 0805191) within the Small Commercial Lines; however, Defendant did not acknowledge Plaintiff's application.

27 The Spectrum pricing position was ultimately given to a white actuarial student with fewer CAS exams than Plaintiff.

28 **In December 2008 after Defendant wrongfully denied a rotational position to Small Commercial Lines, former VP & Actuary (Norman Hebert, FCAS) told plaintiff to look for jobs outside of The Hartford, which suggested that Plaintiff was not good enough to be an employee of the P&C Actuarial department of the Defendant.**

29 The above adverse actions were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e and the Civil Rights Act of 1991, as well as the following Connecticut General Statutes and Acts: 46a-58(a), and 46a-60(a)(4).

30 Based on the foregoing, I was discriminated against in the terms and conditions of my employment with respect to my compensation and benefits on account of my race and national origin in violation of state and federal law.

## SECOND COUNT: (RETALIATION)

31 Thirty-five days (September 18, 2009) after I appealed the Defendant's decision to forfeit my vested benefits, Mr. Kenneth Kasner, Mr. Thomas S Jonhston and Mr. Norman Hebert retaliated against me by placing me on probation status for alleged poor performance.

32  These ethic violations were reported to Mrs. Barbara Kenney (Human Resources), on August 14, 2009, at a face to face meeting, which lasted approximately 90 minutes.

33  Mr. Thomas S Jonhston and Mr. Norman Hebert's retaliatory decision to deny Plaintiff's vested benefits was part of The Defendant's effort to reduce its 2009 operating expenses by $250,000,000.

34  In December 2009, Mr. Hebert told Plaintiff that Mr. Kasner was not involved in decision to put him on probation status on September 18, 2009.

35  While Mr. Thomas S Jonhston and Mr. Norman Hebert's retaliatory decision contributed more than $30,000 to Defendant's effort to reduce its annual expenses by $250 million, it has cost Plaintiff's family at least $90,000 over the past 2 years; will cost the Plaintiff more than $2,000,000 over the next 30 years in term of future salary income.

36  An exhibit outlying the estimated nominal values of these *vested benefits* denied to Plaintiff by the Defendant is attached to this complaint as exhibit A.4.

37  The Defendant had begun retaliated against Plaintiff in February 2007 because he put Mr. Steven Basson (Tara Bush's manager) on notice for discriminatory language used by Ms. Tara Bush toward Plaintiff in February 2007.

38  In March 2007, Mr. Steven Basson informed Plaintiff that Ms. Tara Bush had bad-mouthed him in retaliation for reporting her discriminatory statement to her supervisor. Mr. Basson called the Plaintiff to his office and informed him of Ms. Bush retaliatory conduct.

39  On June 1, 2007, Ms. Bush poorly evaluated Plaintiff's job performance in retaliation for reporting her discriminatory statement to Mr. Basson. Defendant had unsuccessfully tried

to cover up Ms. Bush discriminatory, retaliatory conducts toward Plaintiff by Keeping Plaintiff compensation levels below market in order to force Plaintiff to voluntarily resign from his employment with the Defendant.

40  On February 9, 2010, The Defendant maliciously distributed copies of Plaintiff confidential information to eight unauthorized Hartford employees.

41  In this confidential document, the Defendant informed eight unauthorized employees of senior management's intention to terminate Plaintiff employment in 30 days.

42  According to the Hartford Investigative Services "Investigative Report Summary Case #: I2010035", additional copies were discovered on two (2) copy machines in the Actuarial Department. A copy of the "Investigative Report Summary Case #: I2010035" is attached to this complaint as Exhibit A.5.

43  At a fact finding conference on October 28, 2010, Mr. Eduard Luther (The Hartford investigator) testified that the following Hartford employees: Valerie Vetere, Mr. Norman Hebert, and Mr. Kenneth Kasner had access to the confidential document created on February 8, 2010 (the day before it was distributed on 8-1-2010).

44  Mr. Hebert and Ms. Vetere names were not mentioned in "Investigative Report Summary Case #: I2010035" even though they are equally responsible for the humiliation that Plaintiff had suffered as a result of the malicious distribution of his confidential information to eight unauthorized Hartford employees on February 9, 2010.

45  Mr. Hebert's employment with The Hartford was ended shortly after Plaintiff resigned from The Hartford while his manager (Mr. Thomas S Jonhston) might have been forced to early retirement around the same period.

46 The Defendant's decision to let go these two seasoned executives, shortly after Plaintiff submitted his resignation in spring 2010, suggests a strong correlation with their retaliatory, discriminatory actions toward Plaintiff during the last three years of Plaintiff's employment with the Defendant.

47 The termination of Mr. Norman Hebert's employment with the Defendant shortly after the February 9th incident suggests that Mr. Hebert was somewhat responsible for the distribution of the confidential document to 8 unauthorized Hartford employees on 02-09-2010. Otherwise why would The Hartford let go an experienced Actuary of Mr. Hebert caliber while extending a job offer to Mr. Kasner who reports directly to Mr. Michael J. Blasko.

48 Mr. Hebert, Mr. Kasner, and Mr. Blasko were interviewed by Mr. Eduard Luther of the Hartford Investigative Services in February 2010 as potential suspects. According to Mr. Luther, all employees interviewed during the investigation process were potential suspects.

49 Needless to say, the Defendant had inflicted significant emotional pain to Plaintiff and his family that he had troubled sleeping for a long period of time after he appealed Defendant's decision *to forfeit his vested benefits*.

50 For instance, the decision to forfeit the cash payment of between $15,000 and $30,000 payable on August 1, 2009 prevented Plaintiff from visiting his ailing mother, in Haiti, who passed away few weeks later in mid-August 2009. Needless to say, my family and I had experienced a great deal of pain and suffering as a result of the Defendant discriminatory, retaliatory decision.

51 Defendant's responses to the CHRO for Plaintiff's complaint of discrimination and retaliation denied any wrongdoing by Mr. Thomas S Jonhston and Mr. Norman Hebert (two former senior executives), but ended their employments with The Hartford shortly after <u>Defendant forced Plaintiff to submit his resignation</u> in April 2010.

52  Based on the foregoing, the Defendant is responsible for damages to my reputation and the humiliation that I suffered as a result of the malicious distribution of private information that took place on February 9, 2010 at The Hartford's headquarter in Hartford.

53  The retaliatory, discriminatory decisions by the Defendant toward Plaintiff were negligent infliction of emotional distress, which had caused Plaintiff insomnia for a long period of time during my last year of employment with the Defendant.

54  The above adverse actions were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e and the Civil Rights Act of 1991, as well as the following Connecticut General Statutes and Acts listed below: 46a-58(a), and 46a-60(a)(4).

55  Based on the foregoing, I was retaliated against in the terms and conditions of my employment with respect to my compensation and benefits on account of my decision to report ethic violations by my supervisors and managers to Human Resources on August 14, 2009. I was further retaliated against in Defendant's decision to place me on probation (09-18-2009) on account of my race and national origin in violation of state and federal law.

## PRAYER FOR RELIEF

56  Plaintiff demands judgment against Defendant as follows: (i) compensatory damages in the amount of $5 million ($5,000,000) on Count I; (ii) statutory damages on count II; (iii) special damages in the amount of $2 million ($2,000,000) on all Counts (iv) both pre-judgment and post-judgment interest on all Counts; and, (viii) such other and further relief as this Court finds just and equitable.

## JURY TRIAL

Plaintiff demands a jury trial.

Respectfully submitted,

_____ /s/ _____

Fritzner Mozoul, Plaintiff in Pro Se

176 Sherman Rd.

Chestnut Hill MA, 02467

Dated: August 31, 2011

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff claims:

     1.  Money Damages;

     2.  Interest;

     3.  Attorneys' Fees;

     4.  Cost; and

     5.  Such other and further relief as may be required.

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand, exclusive of interest and cost, is:

(X)     greater than $15,000.00

( )     greater than $2,500.00 but less than $15,000.00

( )     less than $2,500.00

(X)     The remedy sought is based upon an express or implied promise to pay a definite sum.

_____/s/_____

Fritzner Mozoul, Plaintiff in Pro SE

176 Sherman Rd.

Chestnut Hill MA, 02467


Plaintiff demands trial by jury

Dated: August 31, 2011

Exhibit D

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

**Fritzer Mozoul**
COMPLAINANT

vs.                                                        **DATE: August 24, 2011**

**The Hartford**
RESPONDENT

CHRO Case No. 1010117
EEOC No. 16A2010-00024

## RELEASE OF JURISDICTION

Pursuant to the request for a release of jurisdiction, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint in accordance with CONN. GEN. STAT. § 46a-101. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION   BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

In granting this release, the Commission expressly finds in accordance with CONN. GEN. STAT. §§ 46a-100 and 46a-101(b) that all conditions precedent to the issuance of the release have been met. The complaint was timely filed under CONN. GEN. STAT. § 46a-82 and the complaint has been pending for a period of not less than 210 days. The complaint is not currently scheduled for public hearing nor is there reason to believe that the complaint will be resolved within a period of 30 days from the date the Commission received the request.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

With the granting of this release of jurisdiction, the Commission administratively dismisses this complaint in accordance with CONN. GEN. STAT. §                    46a-101(d) without cost or penalty to any party. Very truly yours,

Robert J. Brothers, Jr.
Executive Director

Exhibit D

cc:  Complainant Fritzer Mozoul by e-mail to:
     mfritzner@hotmail.com

     Respondent's  Contact Paul Homer by  email to:
     Paul.Homer@thehartford.com

*Exhibit A*



THE
HARTFORD

August 7, 2008

Fritzner Mozoul
36 Westmoreland Drive
West Hartford, CT 06117

I am pleased to inform you that effective August 1, 2008, you have been granted an award under The P&C Actuarial Professional Designation Award Plan.

The ultimate amount payable will be between $15,000 and $30,000, as determined by P&C Actuarial Management, with payouts occurring upon achievement of Fellowship designation.  The following criteria will be used to determine the payout amount:

Demonstration of leadership competencies with emphasis on:
- Communication and Influence - communicates and influences for impact, fosters open communication, presents information effectively
- Creativity/Innovation - thinks creatively for competitive advantage, questions conventional wisdom and generates new perspectives
- Drive for Results - takes personal accountability for delivering on business commitments, establishes priorities, promotes an entrepreneurial spirit, executes business strategies

This award will pay out only if you achieve Fellowship within five (5) years of receipt of grant, and if you are actively employed at The Hartford at the time of payout.

More information on the Associateship Award can be obtained from the attached Plan document.

Your receipt of this award is significant recognition of your past and anticipated future contributions to The Hartford's success.  Please accept this award with my warm congratulations.

Sincerely,

Thomas S. Johnston, FCAS, MAAA
Senior Vice President & Chief Actuary

cc:     Kenneth Kasner
        CAR Team Member

Hartford Plaza
Hartford, CT 06115
860 547 5000

*Exhibit A-1*

## P&C Actuarial Professional Designation Award Program

In addition to exam raises, and annual merit and company bonuses, customized reward opportunities upon CAS professional designation are incorporated into the program.

*(handwritten, vertical left margin: ACAS grant denied by TJ)*

Upon attainment of Associateship, you will receive a $15,000 target grant. The payout for the grant will vest upon receipt of Fellowship designation. The actual award paid will vary based upon your performance up to a maximum award of $30,000.

*(handwritten, vertical left margin: FCAS grant Letter Denied by TJ)*

Upon Fellowship, you will be eligible to receive payout of the Associate grant. In addition, as a new FCAS (Fellowship – Casualty Actuarial Society), you will be eligible to receive another award grant. This grant amount will be determined by management at the time of grant, range from 10-25% of your base salary at the time of grant and be a fixed amount payable three years after the grant date.

For more information on this program, please refer to the P&C Actuarial Professional Designation Award Plan document available through your Program Administrator.

## Recognition for Your Success

- Upon completing the required exams to become an Associate of the Casualty Actuarial Society, you will be presented with an engraved pewter mug or compote with your initials and the month/year you are admitted into the society. You will be reimbursed for registration and travel expenses to the annual Casualty Actuarial Society meeting to receive your Associateship designation.

- Upon passing your final exam to become a Fellow of the Casualty Actuarial Society, the company will pay for you and a spouse/guest to attend the annual meeting where you will receive the Fellowship designation. It is your responsibility to contact the Program Administrator prior to registering or making reservations. The month and year of the Fellowship designation will be engraved on the pewter mug or compote selected for your Associateship.

*(handwritten, bottom: All these benefits are outlined on Exhibit A.4.)*

- As a new Fellow, you will be reimbursed up to $75 for the framing of your Fellowship diploma after you submit the original receipt to the Program Administrator.

# Your Career at The Hartford

The Hartford offers many outstanding career opportunities for actuaries. To help you proceed through the career track, we offer exciting position rotations, mentoring programs, and professional training.



## Property/Casualty Actuarial Career Path

- Actuarial Analyst (1-2 exams)
- Senior Actuarial Analyst (3-4 exams)   *(handwritten: (FM: March 2005))*
- Actuarial Assistant (5-6 exams)   *(handwritten: (FM: 8-1-2006))*
- Actuarial Associate (Associateship)   *(handwritten: (FM: 2-1-2008))*
- Assistant Actuary & Director (Fellowship)   *(handwritten: (Denied on 8-1-20...))*

The following pages provide more information on each of the positions in the Career Track.

Exhibit A.3

**From:** Albinger, William J (Law) [mailto:William.Albinger@thehartford.com]
**Sent:** Thursday, March 25, 2010 3:58 PM
**To:** William Madsen
**Subject:** RE: Fritz Mozoul [HFSG-LAW.FID49986]

I had previously and it's not.

Bill

---

**From:** William Madsen [mailto:wmadsen@mppjustice.com]
**Sent:** Thursday, March 25, 2010 3:39 PM
**To:** Albinger, William J (Law)
**Subject:** RE: Fritz Mozoul [HFSG-LAW.FID49986]

Thanks Bill—in the meantime, could you ascertain whether –and without making any commitments—six months is within the potential range of resolution? Thanks, Will

**From:** Albinger, William J (Law) [mailto:William.Albinger@thehartford.com]
**Sent:** Thursday, March 25, 2010 3:36 PM
**To:** William Madsen
**Subject:** Fritz Mozoul [HFSG-LAW.FID49986]

Will:

Per our discussion earlier today, Fritz Mozoul's managers will defer meeting with him until next Tuesday, March 30th, to discuss his performance under his final written warning and his employment status.  I understand that during this time Fritz will be considering the proposal that we had previously discussed.

Please let me know if there are any developments.

Thanks

Bill

*Exhibit A.4*

# Summary of Employee Benefits Received by New FCAS in Summer 2009
Vested date: June 25, 2009
Valuation Date: December 1, 2011

| (1) | (2) Effective Date | (3) Annual Nominal Value* | (4) Life Nominal Value** | (5) Denied or Received? |
|---|---|---|---|---|
| 1. *Automatic Promotion to Assistant Actuary & Director (Fellowship)* | 8/1/2009 | $ 32,487 | $ 1,945,971 | Denied |
| 2. *Associateship bonus ranges from $15.00 to $30,000 **** | 8/1/2009 | $ 20,000 | 20,000 | Denied |
| 3. *Fellowship grant award ranges from $15.00 to $30,000* | 8/1/2009 | $ 20,000 | 20,000 | Denied |
| 4. Exam raise (CAS Exam 8) | 8/1/2009 | $ 3,000 | 179,700 | Received |
| 5. Additional increase (to base salary): Fellowship (a.k.a. FCAS) | 8/1/2009 | $ 5,000 | 299,500 | Received |
| 6. Fully paid trip to attend CAS annual meeting in Boston, MA | Nov-09 | $ 2,000 | 2,000 | Received |
| 7. Fully paid dinner with former Chief Actuary (a.k.a. TJ) in Boston, MA | Nov-09 | $ 100 | 100 | Received |
| 8. Pewter MUG engraved with moth/year of FCAS designation | 7/29/2009 | $ 35 | 35 | Received |
| 9. Framing of fellowship diploma | Nov-09 | $ 75 | 75 | Received |
| 10. Statutory interest on ACAS bonus payment (APR: 10%)=(1.1*(28/12)-1)*20000 | | | | NA |
| 11. Total nominal value (NV) of forfeited benefits (1.4 + 2.4 +3.4 + 10.4) | | | $ 1,990,952 | |
| 12. Total NV of forfeited benefits adjusted for pension & 401(k) contributions (R11C4 *1.035*1.08) | | | $ 2,225,486 | |

**Footnotes:**

Social Security Normal Retirement Date: 12/1/2039 — 12/1/2039

Factor for future salary/merit increases [Sn(i)]: based on **4.25%** rate of increase in compensation levels and 30.4 years of future service. [Sn(i)] = (((1+i)^n - 1)/i) such as i = 4.25% and n = 30.4 years — 59.9

n = years of future employment services (12/1/2039 - 8/1/2009)/365 — 30.4

Load for 401(K) employer matched contribution — 1.035

Load for Pension Benefit Cash Balance — 1.08

* {32,487 = (20,000*92,700)*1.19}, [factor 1.19 adjusts for the target bonus, which is 19% for tier 6 employees as of 8/1/2009]

** {1,945,971 = 32,487*59.9}, [59.9 is a factor for future salary increase [Sn(i)]]

*** Not payable to employees who received Associateship (a.k.a. ACAS) designation while working for a different employer (e.g. Wang Yang HU (a.k.a. Oscar HU))

*Disclaimer: $2,225,185 is a reasonable estimate of the forfeited benefits, which are based on reasonable assumptions.*

Prepared by: Fritzner Mozcoul, FCAS

9/11/2011

Exhibit A.5

# The Hartford
### Investigative Services
### Investigative Report Summary
### Case #:     I2010035
### Subject Name:   Kenneth Kasner

**Report Date:** 04/09/2010
    **Incident Dates:**    02-09-10
    **Date Reported to IS:**    02/09/2010

**Case Status:**  Open

**Incident Type:**
    **Primary:**    Unauthorized Release of Document/Information
    **Secondary:**    Violation of the Code of Ethics and Business Conduct

**Company:**    Hartford Group Inc.
**Line Of Business:**    Claims

**Reporting Department:**    Human Resources
**Reported to IS by:**    ERCS
**Method of Discovery:**    Employee notification
**Incident Location:**  **City:**  Hartford  **State:**    CT

**Investigator(s):**    Luther
    **Investigative Unit:** Investigative Services - Home Office

    **Recovery/Restitution Comments:**

**Agency Referral:**    Not referred to an agency
**Law Dept Notification:**    ● Yes ◯ No
    **Notification Date:**    02/17/2010
    **Person Notified:**    William Albinger

**Case Summary/Conclusion:**
    On 02-09-10 Employee Relations Consulting Service (ERCS) reported that a confidential draft copy of a Final Written Warning that they were working on with Hartford AVP Kenneth Kasner, for Hartford employee Fritzner Mozoul, had been copied and distributed to eight unauthorized Hartford employees in the Actuarial Department.

    The subsequent investigation determined that On 02-08-10 Hartford AVP Kenneth Kasner had created a draft copy of a first and final warning regarding performance related issues for one of his direct reports Fritzner Mozoul. The investigation additionally determined that Kasner failed to properly secure the Fritzner Mozoul final warning

<u>Exhibit A.5</u>



# Unauthorized Release of Document /Information
## Violation of The Code of Ethics and Business Conduct

### Kenneth R Kasner /Fritzner Mozoul

### Home Office Hartford , CT

### Investigative File Number : I2010035

### Initial /Closing Report

### April 14, 2010

Distribution:

Mike Hession
  Ron Apter
  William Albinger

Investigation Performed By :

Sidney Luther

Approved By:

John S. Jacewicz, V.P.
Investigative Services

Exhibit A.5

document which was copied and distributed to eight unauthorized Hartford employees in the Actuarial Department as well as being discovered on two(2) copy machines in the Actuarial Department.    The Hartford's Information Protection (THIP) unit conducted forensic examinations of the copy machines involved and determined that eleven (11) copies of a two (2) page document were created at approximately 6:29 am on 02-09-10 on one of the two copy machines in the Actuarial Department.  THIP was unable to identify the person responsible for distributing the confidential documents.

In a written sworn statement taken on 02-17-10, Hartford AVP Kenneth Kasner admitted that he had created a draft copy of a first and final warning regarding performance related issues for Fritzner Mozoul on 02/08/10 and did not properly secure the document in his office. Kenneth Kasner additionally stated that he keeps all of his employees files in his desk and that there are times that his desk is left unlocked

Due to a lack of physical evidence and /or witnesses, Investigative Services has been unable to identify the person or persons responsible for the unauthorized distribution of the confidential Mozoul document.

Hartford AVP Kenneth Kasner has been counseled by ERCS regarding The Hartford's policies practices designed to protect the confidentiality and security of employee records so as to insure that the confidential contents of employee records are only shared with those who have a legitimate business need or as required by law.  This investigation is being closed at this time however should any additional information or leads develop this investigation will be reopened.

On 04-15-10 Hartford employee Fritzner Mozoul resigned from The Hartford for personal reasons.

**Sarbanes-Oxley Related Impact:**    ● Yes ○ No
**Referral Method:**    N/A
**Internal Control Deficiencies:**

STATE OF CONNECTICUT}
               } SS: HARTFORD,    SEPTEMBER 6, 2011
COUNTY OF HARTFORD }


    Then and by virtue hereof on the 6th day of September, 2011, I made due and

legal service on the within named Defendant, **HARTFORD FIRE INSURANCE**

**COMPANY, (THE HARTFORD)** by leaving a verified true and attested copy of

the within original **Writ, Summons, Complaint, Demand For Relief, Statement**

**Of Amount In Demand and Exhibits,** with and in the hands of Hyla Sklar, Special

Assistant for Corporation Service Company, Agent For Service for said Defendant,

at 50 Weston Street, in the City of Hartford.



    The within is the original **Writ, Summons, Complaint, Demand For Relief,**
**Statement Of Amount In Demand and Exhibits,** with my doings hereon endorsed.


FEES:                         ATTEST:

| | |
|---|---|
| Pages | $ 16.00 |
| Endorsements | 1.60 |
| Service | 30.00 |
| Travel | 5.00 |
| | |
| Total | $ 52.60 |

CHARLES J. LILLEY
STATE MARSHAL
HARTFORD COUNTY

# TAB C

**SUMMONS - CIVIL**
JD-CV-1  Rev. 9-08
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
*www.jud.ct.gov*

**See other side for instructions**

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| | |
|---|---|
| ☐ | "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500. |
| ☒ | "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more. |
| ☐ | "X" if claiming other relief in addition to or in lieu of money or damages. |

Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350)
HARTFORD, 95 Washington St. HARTFORD, CT 06106

Telephone number of clerk *(with area code)*
(860) 548-2700

Return Date *(Must be a Tuesday)*
August 16, 2011
Month / Day / Year

☒ Judicial District          G.A.
☐ Housing Session      ☐ Number:

At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349)
HARTFORD

Case type code *(See list on page 2)*
Major: **C**    Minor: **90**

**For the Plaintiff(s) please enter the appearance of:**

Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)*
FRITZNER MOZOUL, 176 Sherman Rd. Chestnut Hill, MA 02467

Juris number *(to be entered by attorney only)*

Telephone number *(with area code)*
(617) 477-4836

Signature of Plaintiff *(If self-represented)*
Mozoul Fritzner

Number of Plaintiffs: 1     Number of Defendants: 1     ☐ Form JD-CV-2 attached for additional parties

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; and Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name: FRITZNER MOZOUL<br>Address: 176 Sherman Road, Chestnut Hill, MA, 02467-3179 | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name: HARTFORD FIRE INSURANCE Company (THE HARTFORD)<br>Address: ONE HARTFORD PLAZA, HARTFORD CT, 06115 | D-50 |
| Additional Defendant | Name:<br>Address: | D-51 |
| Additional Defendant | Name:<br>Address: | D-52 |
| Additional Defendant | Name:<br>Address: | D-53 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

Signed *(Sign and "X" proper box)*

☐ Commissioner of the Superior Court
☒ Assistant Clerk

Name of Person Signing at Left
Adam Bulewich

Date
6/16/11

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

*For Court Use Only*
File Date

I certify I have read and understand the above:

Signed *(Self-Represented Plaintiff)*
Mozoul Fritzner

Date signed
6/16/2011

Name and address of person recognized to prosecute in the amount of $250

Signed *(Official taking recognizance; "X" proper box)*

☐ Commissioner of the Superior Court
☐ Assistant Clerk

Date

Docket Number
11503553

Recognizance Explained n/a.

(Page 1 of 2)

DOCKET No:

RETURN DATE: AUGUST 11, 2011      :      SUPERIOR COURT

FRITZNER MOZOUL      :      J.D. OF HARTFORD

VS.      :      AT HARTFORD

HARTFORD FIRE INSURANCE COMPANY    :      JUNE 16, 2011

## COMPLAINT

### FIRST COUNT: (UNPAID WAGES)

1    In June 2009 I became a Fellow of the Casualty Actuarial Society (FCAS), entitling me under the Defendant's policy for the Property & Casualty Actuarial Student Program, which in turn would have provided me a cash payment of between $15,000 and $30,000 payable on August 1, 2009. I was wrongfully denied my Associate grant as a result of discrimination and retaliatory animus. In addition to being an act of discrimination, the decision of Defendant to deny me this grant was a violation of its own policies and procedures as a well as a breach of contractual obligations which Defendant had toward me. A copy of the contract is attached to this complaint as exhibit A.

2    On August 12, 2009, Mr. Kenneth Kasner (my former supervisor) informed me that former Chief Actuary (TJ) forfeited my ACAS and FCAS grants because of my job performance in Specialty, 12 days after the other new fellows received their cash payments and the automatic promotion to Director & Assistant Actuary on 8-1-2009.

3    The Hartford's decision to deny me the Fellowship grant was a violation of its own policies and procedures as a well as a breach of contractual obligations which Defendant had toward me. Because of the Defendant retaliatory decision, I was not able to negotiate the collection of my FCAS bonus from my current employer in March 2010.

4    The provision of the policy states the following: "Upon Fellowship, you will be eligible to receive payout of the Associate grant. In addition, as a new FCAS (Fellowship – Casualty Actuarial Society), you will be eligible to receive another award grant. This grant amount will be determined by management at the time of grant, range from 10-25% of your base salary at the time of grant and be a fixed amount payable three year after the grant date.

5    On August 1, 2009, the Defendant paid the ACAS bonus to the other eligible new FCAS, issued them contracts granting them their FCAS bonus, and promoted them to tier 6 automatically. The Defendant denied me all these same benefits, which had an economic

value of more than $500,000. The range of payable amounts provided by the FCAS grant is identical to the range of payable amount provided by the ACAS grant. See exhibit A.

6   The Defendant had denied me my annual performance bonus and merit increase for three consecutive years in retaliation for putting Mr. Steven Basson on notice for discrimination. For instance, in February 2007, while working in the National Account Department, my supervisor, Ms. Tara E. Bush, FCAS spoke condescendingly to me and said "I don't trust you as a person" during the presentation of my work in Ms. Bush's office.

7   The Hartford discriminated and retaliated against me by denying me the automatic Tier 6 promotion as well. Because of the Defendant retaliatory decision, I was not able to negotiate a higher compensation package in March 2010 when I accepted a job offer with my current employer.

8   The above adverse actions were in violation of the Connecticut Minimum Wage Act, as well as Connecticut General Statutes § 31-72.

9   On March 25, 2010, the Defendant admitted violating the Connecticut Minimum Wage Act when my former employer offered me, through my former attorney, a settlement amount equivalent to the double statutory damage related to the minimum dollar amount of my ACAS grant that was payable on August 1, 2009. A copy of the E-communication is attached to this complaint as exhibit C.

**SECOUND COUNT: (PROMISSORY ESTOPPEL)**

10  In June 2009 I became a Fellow of the Casualty Actuarial Society (FCAS), entitling me under the Defendant's policy for the Property & Casualty Actuarial Student Program, which in turn would have provided me a cash payment of between $15,000 and $30,000 payable on August 1, 2009. I was wrongfully denied my Associateship Award as a result of discrimination and retaliatory animus. In addition to being an act of discrimination, the decision of Defendant to deny me this grant was a violation of its own policies and procedures as a well as a breach of contractual obligations which Defendant had toward me.

11  The Defendant's decision to deny me the Associateship grant, Fellowship grant, and the automatic tier 6 promotion was a violation of its own policies and procedures as a well as a breach of contractual obligations which Defendant had toward me.

12  The provision of the policy states the following: "Upon Fellowship, you will be eligible to receive payout of the Associate grant. In addition, as a new FCAS (Fellowship – Casualty Actuarial Society), you will be eligible to receive another award grant. This grant amount will be determined by management at the time of grant, range from 10-25% of your base salary at the time of grant and be a fixed amount payable three year after the grant date.

13  On August 1, 2009, the Defendant paid the ACAS bonus to the other eligible new FCAS, issued them contracts granting them their FCAS bonus, and promoted them to tier 6 automatically. The Defendant denied me all these benefits, which have an economic value of more than $500,000. Below is a table of nominal value of unpaid benefits:

| Unpaid Benefit** | Minimum Value | Maximum Value | Average Payout Value | Payment Date* | Nominal Value as of 8/1/2009 |
|---|---|---|---|---|---|
| ACAS Grant | $ 15,000 | $ 30,000 | $ 20,000 | 8/1/2009 | $ 20,000 |
| FCAS Grant | $ 15,000 | $ 30,000 | $ 20,000 | 8/1/2012 | $ 20,000 |
| Automatic Tier Promotion | $20,000/year | $20,000/year | $30,000 | From 8/1/2009 to SSNRD | $ 930,000 |
| Total Nominal Value of Unpaid Benefits | | | | | $ 970,000 |

\* SSNRD = Social Security Normal Retirement Date
\*\* ACAS Grant means Associateship Grant Award; FCAS Grant means Fellowship Grant Award

14  The Defendant had denied me my annual performance bonus and merit increase for three consecutive years in retaliation for putting Mr. Steven Basson on notice for discrimination. For instance, in February 2007, while working in the National Account Department, my supervisor, Ms. Tara E. Bush, FCAS spoke condescendingly to me and said "I don't trust you as a person" during the presentation of my work in Ms. Bush's office.

15  The Defendant violated its policy for the Property & Casualty Actuarial Student Program by denying me the automatic Tier 6 promotion on August 1, 2009. For instance, On August 1, 2009, had the Defendant granted me the automatic Tier 6 promotion, I would have been able to receive, from my current employer, an additional base salary of between $20,000 and $40,000 effective April 20, 2010. Instead of granting me such promotion, the Defendant changed a key provision of the Actuarial Student Program Handbook to justify their retaliatory, discriminatory decisions against me.

16  For instance, On August 1, 2009, had the Defendant granted me the FCAS grant, I would have been able to receive, from my current employer, a cash payment of between $15,000 and $30,000 payable on August 1, 2012.

17  The above adverse actions clearly give Plaintiff a claim of Promissory Estoppel against the Defendant.

18  On March 25, 2010, the Defendant admitted Promissory Estoppel when my former employer offered me, through my former attorney, a settlement amount equivalent to the double statutory damage related to the minimum dollar amount of my ACAS grant that was payable on August 1, 2009. A copy of the E-communication is attached to this complaint as exhibit C.

**THIRD COUNT: (INTENTIONAL AFFLICTION of EMOTIONAL DISTRESS)**

## THIRD COUNT: (INTENTIONAL AFFLICTION of EMOTIONAL DISTRESS)

19  On February 9, 2010, The Defendants maliciously distributed copies of a confidential document to eight unauthorized Hartford employees. In this confidential document, the Defendant informed these unauthorized employees of senior management's intention to terminate my employment in 30 days. According to the Hartford Investigative Services "Investigative Report Summary Case #: I2010035", additional copies were discovered on two (2) copy machines in the Actuarial Department. Investigative Report Summary Case #: I2010035 is enclosed. A copy of the "Investigative Report Summary Case #: I2010035" is attached to this complaint as exhibit B.

20  At a fact finding conference on October 28, 2010, Mr. Eduard Luther (The Hartford investigator) testified the following Hartford employees: Valerie Vetere, former VP & Actuary, Mr. Norman Hebert and AVP & Actuary, Mr. Kenneth Kasner had access to the confidential document created on 02-08-2010. However, Mr. Hebert and Ms. Vetere names were not mentioned in "Investigative Report Summary Case #: I2010035" even though they are equally responsible for the humiliation that Plaintiff had suffered as a result of the malicious distribution of this confidential document to eight unauthorized Hartford employees on February 9, 2010.

21  Mr. Hebert's employment with The Hartford was terminated shortly after I resigned from The Hartford while his manager (Mr. Thomas S Jonhston) was forced to early retirement around the same period. The Defendant's decision to let go these two seasoned executives, shortly after I submitted my resignation in spring 2010, suggests a strong correlation with their retaliatory, discriminatory actions toward Plaintiff during the last three years of Plaintiff's employment with the Defendant.

22  The termination of Mr. Norman Hebert's employment with the Defendant shortly after the February 9th incident suggests that Mr. Hebert was somewhat responsible for the distribution of confidential information to 8 unauthorized Hartford employees on 02-09-2010. Otherwise why would The Hartford let go an experienced Actuary of Mr. Hebert's caliber while extending a job offer to Mr. Kasner who reports directly to Mr. Michael J. Blasko, FCAS. All these 3 actuaries were interviewed by Mr. Eduard Luther of the Hartford Investigative Services in February 2010 as potential suspects.

23  On August 14, 2009, I appealed Defendant's decision to forfeit my grants and my automatic Tier 6 promotion by claiming code of ethic violation, which prohibits discrimination, retaliation, and breach of contract as well. I met Mrs. Barbara Kenney from Human resources, and put Defendant on notice for discrimination, retaliation, and breach of contract. After appealing the decision, the Defendant redesigned the P&C Actuarial Professional Designation Award Plan, and the Actuarial Student Program Handbook by adding provisions that discriminated against me and retaliated by placing me on probation effective September 18, 2009. Needless to say, the Defendant had afflicted so much emotional pain to me and my family that I had troubled sleeping for a long period of time after I appealed Defendant's decision to forfeit my grants and my automatic promotion to tier 6.

24  For instance, the decision to forfeit the cash payment of between $15,000 and $30,000 payable on August 1, 2009 prevented me from visiting my ailing mother, in Haiti, who passed away few weeks later in mid-August 2009. Needless to say, my family and I had experienced a great deal of pain and suffering as a result of the Defendant retaliatory, discriminatory decision.

25  Defendant's responses to the CHRO on my complaint of discrimination and retaliation denied any wrongdoing by Mr. Thomas S Jonhston and Mr. Norman Hebert (two former senior executives), but terminated their employment shortly after I submitted my resignation in April 2010. As of this writing, the CHRO has not issued the draft findings of the October 2010 fact findings conference.

26  Based on the foregoing, the Defendants are responsible for damages to my reputation and the humiliation that I suffered as a result of the malicious act that took place on February 9, 2010 at The Hartford's headquarter in Hartford. The retaliatory, discriminatory decisions by the Defendants toward me were intentional affliction of emotional distress, which had caused me insomnia for a long period of time during my last year of employment with the Defendant.

### PRAYER FOR RELIEF

27  Plaintiff demands judgment against Defendant as follows: (i) statutory double damages on count I; (ii) compensatory damages in the amount of $1 million ($1,000,000) on Count II; (iii) compensatory damages in the amount of $2 million ($2,000,000) on Count III; (iv) special damages in the amount of $2 million ($2,000,000) on all Counts (v) both pre-judgment and post-judgment interest on all Counts; and, (vi) such other and further relief as this Court finds just and equitable.

### JURY TRIAL

Plaintiff demands a jury trial.


Respectfully submitted,


Fritzner Mozoul, Plaintiff in Pro Se
176 Sherman Rd.
Chestnut Hill MA, 02467

Dated: June 16, 2011

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff claims:

1. Money Damages;
2. Interest;
3. Attorneys' Fees;
4. Cost; and
5. Such other and further relief as may be required.

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand, exclusive of interest and cost, is:

(X)    greater than $15,000.00

( )    greater than $2,500.00 but less than $15,000.00

( )    less than $2,500.00

(X)    The remedy sought is based upon an express or implied promise to pay a definite sum.


_Mozul Fritzner_
Fritzner Mozout, Plaintiff in Pro Per
176 Sherman Rd.
Chestnut Hill MA, 02467


Plaintiff demands trial by jury

Dated: June 16, 2011

Exhibit A



August 7, 2008

Fritzner Mozoul
36 Westmoreland Drive
West Hartford, CT 06117

I am pleased to inform you that effective August 1, 2008, you have been granted an award under The P&C Actuarial Professional Designation Award Plan.

The ultimate amount payable will be between $15,000 and $30,000, as determined by P&C Actuarial Management, with payouts occurring upon achievement of Fellowship designation. The following criteria will be used to determine the payout amount:

Demonstration of leadership competencies with emphasis on:
- Communication and Influence - communicates and influences for impact, fosters open communication, presents information effectively
- Creativity/Innovation - thinks creatively for competitive advantage, questions conventional wisdom and generates new perspectives
- Drive for Results - takes personal accountability for delivering on business commitments, establishes priorities, promotes an entrepreneurial spirit, executes business strategies

This award will pay out only if you achieve Fellowship within five (5) years of receipt of grant, and if you are actively employed at The Hartford at the time of payout.

More information on the Associateship Award can be obtained from the attached Plan document.

Your receipt of this award is significant recognition of your past and anticipated future contributions to The Hartford's success. Please accept this award with my warm congratulations.

Sincerely,

Thomas S. Johnston, FCAS, MAAA
Senior Vice President & Chief Actuary

cc:     Kenneth Kasner
        CAR Team Member

Exhibit- B



# Unauthorized Release of Document /Information
## Violation of The Code of Ethics and Business Conduct

### Kenneth R Kasner /Fritzner Mozoul

### Home Office Hartford , CT

### Investigative File Number : I2010035

### Initial /Closing Report

### April 14, 2010

**Distribution:**

Mike Hession
  Ron Apter
  William Albinger

Investigation Performed By :

Sidney Luther

Approved By :

John S. Jacewicz, V.P.
Investigative Services

# The Hartford

## Investigative Services

### Investigative Report Summary
#### Case #:       I2010035
##### Subject Name:   Kenneth Kasner

**Report Date:** 04/09/2010
  **Incident Dates:**        02-09-10
  **Date Reported to IS:**   02/09/2010

**Case Status:**  Open

**Incident Type:**
  **Primary:**        Unauthorized Release of Document/Information
  **Secondary:**      Violation of the Code of Ethics and Business Conduct

**Company:**           Hartford Group Inc.
**Line Of Business:**  Claims

**Reporting Department:**   Human Resources
**Reported to IS by:**     ERCS
**Method of Discovery:**   Employee notification
**Incident Location:**   **City:**  Hartford   **State:**     CT

**Investigator(s):**       Luther
  **Investigative Unit:** Investigative Services - Home Office

  **Recovery/Restitution Comments:**

**Agency Referral:**          Not referred to an agency
**Law Dept Notification:**    ● Yes ○ No
  **Notification Date:**      02/17/2010
  **Person Notified:**        William Albinger

**Case Summary/Conclusion:**
  On 02-09-10 Employee Relations Consulting Service (ERCS) reported that a confidential draft copy of a Final Written Warning that they were working on with Hartford AVP Kenneth Kasner, for Hartford employee Fritzner Mozoul, had been copied and distributed to eight unauthorized Hartford employees in the Actuarial Department.

  The subsequent investigation determined that On 02-08-10 Hartford AVP Kenneth Kasner had created a draft copy of a first and final warning regarding performance related issues for one of his direct reports Fritzner Mozoul. The investigation additionally determined that Kasner failed to properly secure the Fritzner Mozoul final warning

document which was copied and distributed to eight unauthorized Hartford employees in the Actuarial Department as well as being discovered on two(2) copy machines in the Actuarial Department.    The Hartford's Information Protection (THIP) unit conducted forensic examinations of the copy machines involved and determined that eleven (11) copies of a two (2) page document were created at approximately 6:29 am on 02-09-10 on one of the two copy machines in the Actuarial Department.  THIP was unable to identify the person responsible for distributing the confidential documents.

In a written sworn statement taken on 02-17-10, Hartford AVP Kenneth Kasner admitted that he had created a draft copy of a first and final warning regarding performance related issues for Fritzner Mozoul on 02/08/10 and did not properly secure the document in his office. Kenneth Kasner additionally stated that he keeps all of his employees files in his desk and that there are times that his desk is left unlocked

Due to a lack of physical evidence and /or witnesses, Investigative Services has been unable to identify the person or persons responsible for the unauthorized distribution of the confidential Mozoul document.

Hartford AVP Kenneth Kasner has been counseled by ERCS regarding The Hartford's policies practices designed to protect the confidentiality and security of employee records so as to insure that the confidential contents of employee records are only shared with those who have a legitimate business need or as required by law.  This investigation is being closed at this time however should any additional information or leads develop this investigation will be reopened.

On 04-15-10 Hartford employee Fritzner Mozoul resigned from The Hartford for personal reasons.

**Sarbanes-Oxley Related Impact:**    ● Yes ○ No
**Referral Method:**    N/A
**Internal Control Deficiencies:**

Exhibit – C

**From:** Albinger, William J (Law) [mailto:William.Albinger@thehartford.com]
**Sent:** Thursday, March 25, 2010 3:58 PM
**To:** William Madsen
**Subject:** RE: Fritz Mozoul [HFSG-LAW.FID49986]

I had previously and it's not.

Bill

---

**From:** William Madsen [mailto:wmadsen@mppjustice.com]
**Sent:** Thursday, March 25, 2010 3:39 PM
**To:** Albinger, William J (Law)
**Subject:** RE: Fritz Mozoul [HFSG-LAW.FID49986]

Thanks Bill—in the meantime, could you ascertain whether –and without making any commitments—six months is within the potential range of resolution?  Thanks, Will

**From:** Albinger, William J (Law) [mailto:William.Albinger@thehartford.com]
**Sent:** Thursday, March 25, 2010 3:36 PM
**To:** William Madsen
**Subject:** Fritz Mozoul [HFSG-LAW.FID49986]

Will:

Per our discussion earlier today, Fritz Mozoul's managers will defer meeting with him until next Tuesday, March 30th, to discuss his performance under his final written warning and his employment status.  I understand that during this time Fritz will be considering the proposal that we had previously discussed.

Please let me know if there are any developments.

Thanks

Bill

STATE OF CONNECTICUT}
                     } SS: HARTFORD,    JUNE 20, 2011
COUNTY OF HARTFORD   }


       Then and by virtue hereof on the 20th day of June, 2011, I made due and legal

service on the within named Defendant, **HARTFORD FIRE INSURANCE**

**COMPANY (THE HARTFORD),** by leaving a verified true and attested copy

of the original **Writ, Summons, Complaint, Demand For Relief and Statement**

**Of Amount In Demand and Exhibits,** with and in the hands of Priscilla Rua,

Special Assistant for Corporation Service Company, Agent For Service for said

Defendant, at 50 Weston Street, in the City of Hartford.


       The within is the original **Writ, Summons, Complaint, Demand For Relief and**
**Statement Of Amount In Demand and Exhibits**, with my doings hereon endorsed.

FEES:                                  ATTEST:

Pages        $ 12.00
Endorsements    1.60                  CHARLES J. LILLEY
Service        30.00                STATE MARSHAL
Travel         5.00                 HARTFORD COUNTY

Total         $ 48.60